# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATISHA LYNN BRICKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 17-2573-JWL** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).[1]  Finding error in the Administrative Law Judge's (ALJ's) consideration of Listing 12.05C at step three of the sequential evaluation process, and that a finding of "disabled" is compelled by the findings of the ALJ, the court ORDERS that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

---

[1] Plaintiff asserts that this case "involves a claim for Disability Insurance Benefits Under Title II of the Social Security Act" (Pl. Br. 1), but as the Commissioner points out Plaintiff applied for SSI benefits.  (Comm'r Br. 1) (citing R. 163, 214).  Moreover, in her Reply Brief, Plaintiff asks the court to grant her "claim for [SSI benefits] under Title XVI of the Social Security Act."  (Reply 3).

REMANDING the case for computation and award of Title XVI benefits in accordance with this decision.

I.    **Background**

Plaintiff argues that the ALJ erred in finding Plaintiff's condition does not meet Listing 12.05C because he erroneously concluded that the record does not demonstrate the requisite deficits in adaptive functioning prior to age 22. She seeks remand for an award of benefits.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R.

§ 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues as presented in Plaintiff's Brief, and finds the ALJ erred in the legal standard applied to Listing 12.05C at step three, and that the ALJ's findings at step three compel a finding that Plaintiff's condition meets Listing 12.05C. Therefore, the court remands for an immediate computation and award of SSI benefits.

## II.    Discussion

Plaintiff points out that the ALJ found that "the record does not demonstrate the requisite deficits in adaptive functioning prior to age 22," and that "[a]s a result, the claimant's below average intellectual functioning does not satisfy the 'paragraph C'

4

criteria of listing 12.05."  (R. 42); <u>see also</u>, (Pl. Br. 19).  She argues that in reaching his

decision, the ALJ improperly "improvise[d] h[is] own definition of 'adaptive

functioning.'"  (Pl. Br. 19) (citing <u>Barnes v. Barnhart</u>, 116 F. App'x 934, 942 (10th Cir.

2004)).  She argues that he "must provide some indication of the definition he used to

determine if a claimant has deficits in adaptive functioning."  <u>Id.</u> at 19-20 (citing 116 F.

App'x at 942; <u>Havenar v. Colvin</u>, No. 13-CV-692-PJC, 2015 WL 382450, at *3-4 (N.D.

Okla. Jan. 27, 2015; <u>Rodriguez v. Astrue</u>, No. 07-cv-00906-LTB, 2008 WL 1957742, at

*5-6 (D. Colo. May 2, 2008); and <u>Technical Revisions to Medical Criteria for

Determination of Disability</u>, 67 Fed. Reg. 20018-01, 20022 (Apr. 24, 2002)).

    She argues that "this [c]ourt has held that such activities [(as cited by the ALJ)]

are not inconsistent with mild mental retardation."  <u>Id.</u> at 20 (citing <u>Gross v. Astrue</u>, No.

11-1256-JWL, 2012 WL 2449900 (D. Kan. June 6, 2012)).  She goes on to explain that

the evidence will not support a finding that Plaintiff does not have deficits in adaptive

functioning initially manifested during the developmental period, and notes that the ALJ

found Plaintiff has physical and other mental impairments consisting of degenerative disc

disease of the lumbar spine, asthma, obstructive sleep apnea, obesity, bipolar disorder,

and anxiety disorder/post-traumatic stress disorder (PTSD), which impose additional and

significant work-related limitations of functioning.  (Pl. Br. 20-23).  She argues that "the

record overwhelmingly supports a disability finding and remand would merely delay the

receipt of benefits to which Plaintiff is entitled," and that remand for immediate

computation and award of benefits is appropriate.  <u>Id.</u> at 24 (citing <u>Jackson v. Schweiker</u>,

696 F 2d 630, 631 at n.1 (8th Cir. 1983); Lewin v. Schweiker, 654 F.2d 631, 635 (8th Cir. 1981); Ziminga v. Schweiker, 651 F.2d 611, 613 (8th Cir. 1981)).

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's condition does not meet the criteria of Listing 12.05C. (Comm'r Br. 4). She argues that "the record evidence does not support a finding of deficits in adaptive functioning manifesting before age 22." (Comm'r Br. 5). She argues that "[i]t was reasonable for the ALJ to conclude that Plaintiff effectively coped with common life demands and met standards of personal independence expected of her particular age group, sociocultural background, and community setting." Id. at 6 (citing Green v. Colvin, 2:14-CV-2418-JTM, 2015 WL 4275933, at *4 (D. Kan. July 14, 2015); and Hayes v. Colvin, 13-2521-EFM, 2014 WL 6609380, at *3 (D. Kan. Nov. 20, 2014)). She asserts that Dr. Israel's diagnosis of borderline intellectual functioning rather than intellectual disability[2] "reflects a different and lesser degree of intellectual dysfunction than intellectual disability," that the opinion of a healthcare consultant is necessary for an ALJ to find that adaptive functioning is consistent with IQ test results, and that the "absence of a diagnosis of intellectual disability is significant [because] the medical

_____

[2] Listing 12.05, when originally promulgated referred to "mental retardation," which has since been called "intellectual disability." Compare, 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05 (2001); with 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05 (2016). Plaintiff primarily uses the term "mental retardation," but also uses the term "intellectual disability," and recognizes that the term is "now described as Intellectual Disability." (Pl. Br. 16). The Commissioner exclusively uses the term "intellectual disability." (Comm'r Br., passim). The court will use either term where necessary for clarity, but will prefer the term "intellectual disability."

criteria for a diagnosis of intellectual disability mirror the criteria of the capsule definition of Listing 12.05." Id. at 7 (citing Program Operations Manual System (POMS) DI 24515.056.D.2, available at 2001 WL 1933392[3]; and 67 Fed. Reg. at 20022). She argues that to meet a Listing is Plaintiff's burden and it requires a very high standard, but that Plaintiff has not met her step three burden.

In her Reply Brief, Plaintiff again appeals to this court's decision in Gross and notes other district court decisions which have cited that opinion favorably. (Reply 2) (citing Woods v. Berryhill, No. 16-4059-DDC, 2017 WL 4284972 (D. Kan. Sept. 27, 2017); Gardner v. Colvin, No. 14-4048-SAC, 2015 WL 4598802 (D. Kan. July 29, 2015); and Swan v. Astrue, No. 11-cv-482-JD, 2013 WL 1314783 (D.N.H. Mar. 28, 2013)). She argues that she has met her burden to show disability, that the ALJ erred as a matter of law and "this [c]ourt should grant Plaintiff's claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act." Id. at 3.

## A.      The ALJ's Findings

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (R. 38). At step two, he found that she has severe impairments including "degenerative disc disease of the lumbar spine, asthma, obstructive sleep apnea, obesity, bipolar disorder, an anxiety disorder/post-traumatic stress disorder (PTSD), and

_____

[3] The court notes that it was unable to find the cited POMS at 2001 WL 1933392, but the POMS is available online at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056 (last visited, October 5, 2018).

borderline intellectual functioning." Id. He found at step three that Plaintiff "does not

have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments." Id. at 39. He explained his finding regarding

Listing 12.05C:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have an intellectual disability with significantly sub-average general intellectual functioning with deficits in adaptive functioning manifested during the developmental period (before age 22) with a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As noted above, the claimant took the Wechsler Intelligence Scale for Children-3rd Edition (WISC-III) exam in January 2000 and received a verbal IQ score of 62, a performance IQ score of 74, and a full-scale IQ score of 65 (Exhibit 1E/4 [(R. 181)]). In 2005, she took the Wechsler Adult Intelligence Scale-3rd Edition (WAIS-III) exam and received a verbal IQ score of 69, a performance IQ score of 73, and a full-scale IQ score of 68 (Exhibit 1A/5 [(R. 97)]). Although the claimant's verbal and full-scale IQ scores satisfy the IQ requirement of the "paragraph C" criteria, the record does not reflect the requisite deficits in adaptive functioning prior to age 22 to meet listing 12.05(C). As discussed above, the claimant reports she provides for her own personal care, takes care of her children, cleans with assistance, prepares complete meals, does the laundry, shops, pays bills, reads, and watches television (Exhibit 5E [(R. 236-46)]). Additionally, she graduated high school in special education classes (Exhibit 1E [(R. 178-213)]). Moreover, she is married, has a family, raises her children, reads the Bible, and gardens. Finally, following a consultative evaluation in April 2016, Alan Israel, Ph.D., opined the claimant's activities of raising her children, reading the Bible, and caring for a garden suggests she more than likely has borderline intellectual functioning (Exhibit 4F/7 [(R. 426)]). Accordingly, I find the record does not demonstrate the requisite deficits in adaptive functioning prior to age 22. As a result, the claimant's below average intellectual functioning does not satisfy the "paragraph C" criteria of listing 12.05.

(R. 42).

The ALJ assessed Plaintiff with the RFC for a range of light work, id. at 43, and found that she has no past relevant work, but can perform jobs existing in significant numbers in the economy represented by occupations such as a garment sorter, a photocopy machine operator, or a retail price marker. (R. 49-50). Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her application. Id. at 50-51.

**B.    The Step Three Standard and Listing 12.05C**

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 416.925(a); see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five). "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the Listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 12.05 Provides:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period:  <u>i.e.,</u> the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.     Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; Or

B.     A valid verbal, performance, or full scale IQ of 59 or less; Or

C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; Or

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05 is somewhat different than the other listings for mental disorders. Id., § 12.00A. The listing contains a diagnostic description of intellectual disability (introductory paragraph) and four sets of criteria describing listing-level severity (Paragraphs A through D). 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00A, 12.05(A-D). Paragraphs A through D provide four distinct and independent ways in which an individual having significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period might satisfy the criteria of Listing 12.05. Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1 (10th Cir. Aug. 26, 1993). To meet the listing, a claimant must show that his or her condition satisfies both the diagnostic description of intellectual disability and any one of the four severity criteria. Id., § 12.00A.

The regulations provide that where verbal, performance, and full scale IQ scores are derived from a test, the lowest score of the three will be used when considering Listing 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D(6)(c). If the claimant has an additional physical or mental impairment(s) which is "severe" within the meaning of

20 C.F.R. § 416.920(c), it will be considered to impose an additional and significant work-related limitation of function satisfying that criterion of Listing 12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(A); see also, Hinkle v. Apfel, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (reaching the same conclusion before the regulations were changed in 2000 to specify the equivalence between "severe" impairments and "additional and significant work-related limitation of function.").  Based upon the principles discussed above, to meet Listing 12.05C, a claimant must show all three criteria are met: (1) evidence of onset of intellectual disability before age twenty-two ("deficits in adaptive functioning initially manifested during the developmental period"), (2) a valid IQ score of 60 through 70, and (3) a severe physical or mental impairment in addition to intellectual disability.

### C.    Analysis

Here, the parties agree that the ALJ found that criteria 2 and 3 above were met. (R. 38) ("The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obstructive sleep apnea, obesity, bipolar disorder, an anxiety disorder/post-traumatic stress disorder (PTSD), [in addition to] borderline intellectual functioning.") (bolding omitted); (R. 42) ("the claimants verbal and full-scale IQ scores satisfy the IQ requirement of the 'paragraph C' criteria"); see also (R. 96) (state agency consultant psychologist, Dr. Smith, finding, "A valid verbal, performance or full scale IQ of 60 through 70").  However, the ALJ found criterion 1 (evidence of onset of intellectual

disability before age twenty-two) was not met because "the record does not demonstrate the requisite deficits in adaptive functioning prior to age 22." (R. 42).

This finding is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. The evidence the ALJ relied upon to reach this conclusion consisted primarily of evidence regarding Plaintiff's functioning after age 22: providing personal care, taking care of her children, cleaning (with assistance), preparing meals, doing laundry, shopping, paying bills, reading, watching television, being married, gardening. (R. 42). Such activities after age 22 say little regarding deficits in adaptive functioning before age 22. And, as Plaintiff points out, this court has previously noted that such activities are not inconsistent with meeting Listing 12.05C[4]:

> The facts that an individual lives and functions independently, is able to work, and has attended schooling (even beyond high school) have been held in several cases to be facts which are not inconsistent with mild [intellectual disability]. Markle v. Barnhart, 324 F.3d 182 (3rd Cir.2003)

---

[4] Listing 12.05C was formerly called "mild mental retardation," and the Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Revision 2000) ("DSM-IV-TR) described it thus: "Mild [intellectual disability] is roughly equivalent to what used to be referred to as the educational category of 'educable.' This group constitutes the largest segment (about 85%) of those with the disorder. As a group, people with this level of [intellectual disability] typically develop social and communication skills during the preschool years (ages 0–5), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without [intellectual disability] until a later age. By their late teens they can acquire academic skills up to approximately sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild [intellectual disability] can usually live successfully in the community, either independently or in supervised settings." DSM-IV-TR § 317.00 (emphases added).

(obtained GED, employed painting, wallpapering and cutting grass, able to use judgment, function independently, work well with others, and maintain attention and concentration); <u>Morales v. Apfel</u>, 225 F.3d 310, 318 (3rd Cir.2000) (work as a landscaper, laborer and packing line worker); <u>Brown [v. Sec'y of Health and Human Servs.]</u>, 948 F.2d [268,] 270 [(6th Cir. 1991)] (could follow a road atlas and had worked as a truck driver); <u>McKown</u>, 1993 WL 335788 (graduated from high school and had spent two semesters in college); <u>Nieves v. Sec'y of Health and Human Servs.</u>, 775 F.2d 12, 14 (1st Cir.1985) (worked as a seamstress). Because such activities are consistent with mild [intellectual disability], as explained above and in DSM–IV–TR, they cannot demonstrate a level of adaptive functioning that is higher than IQ scores which are also consistent with mild [intellectual disability]. Listing 12.05C accommodates such activities, and anticipates that a mildly mentally retarded individual will be able to perform all of these activities and will also be able to perform substantial gainful activity unless or until [s]he develops another severe mental or physical impairment. Contrary to the ALJ's assertion, these activities do not indicate adaptive functioning to a higher degree than would be indicated by IQ scores between 60 and 70 as contemplated by Listing 12.05C.

<u>Gross v. Astrue</u>, No. 11-1256-JWL, 2012 WL 2449900, at *10 (D. Kan. June 26, 2012)

The ALJ did note that before age 22 Plaintiff "graduated high school in special education classes." (R. 42). However, as noted above, high school graduation is not inconsistent with meeting Listing 12.05C, and attending special education classes in schooling is at least some evidence of "deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05. Moreover, the ALJ acknowledged that the state agency psychological consultant who reviewed the record evidence, Dr. Smith, found "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., before age 22." (R. 47) (citing Ex. 1A/4, R. 96). The ALJ disagreed

14

with Dr. Smith's opinion that the claimant has deficits in adaptive
functioning initially manifested before age 22. Specifically, I find the
claimant's completion of high school and the fact she reads the Bible,
provides for her own personal care, performs household chores, shops,
gardens, prepares complete meals, pays bills, does the laundry, and takes
care of her children indicates she does not have the requisite deficits in
adaptive functioning contemplated in listing 12.05.

Id. This finding suffers from the same problems as noted above regarding the Step Three

finding. And, Listing 12.05 does not contemplate a quantity of "requisite deficits" in

adaptive functioning. Rather, it requires "deficits in adaptive functioning initially

manifested during the developmental period: i.e., the evidence demonstrates or supports

onset of the impairment before age 22." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05. By

suggesting that Plaintiff's condition did not have the "requisite deficits" in adaptive

functioning, the ALJ acknowledges that she had deficits in adaptive functioning before

age 22. That is all the Listing requires. The ALJ applied the incorrect standard.

The ALJ relies upon Dr. Israel's finding that despite qualifying IQ scores in 2000,

Plaintiff's "activities of raising her children, reading the Bible, and caring for a garden

suggests she more likely has borderline intellectual functioning." (R. 426). However,

Dr. Israel's rationale suffers from the same problems as does the ALJ's. It relies upon

current functioning to discount deficits in adaptive functioning before age 22, without

recognizing or discussing that despite such deficits in adaptive functioning, Plaintiff may

have (and apparently did) adapted sufficiently to achieve social and vocational skills

adequate for minimal self-support and for living successfully in the community.

Moreover, Dr. Israel apparently did not know about Plaintiff's IQ scores in 2005, because

he mentioned only the scores in 2000. (R. 426). And, he admittedly did not have Plaintiff's mental health treatment records from Swope Health Services to aid in his consideration. (R. 426) ("While this claimant states that she has PTSD and has been seen at Swope for eight years, there are no records available to this examiner."). The ALJ's reliance upon Dr. Israel's suggestion that Plaintiff has borderline intellectual functioning rather than intellectual disability, is further eroded by the fact that Dr. Israel did not diagnose borderline intellectual functioning, but rather stated a need to "Rule-out Borderline Intellectual Functioning." Id.

Both Plaintiff and the Commissioner rely on "Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, 20022 (Apr. 24, 2002). (Pl. Br. 19) ("allowing use of any of the measurement methods recognized and endorsed by the professional organizations"); (Comm'r Br. 7) (arguing that the criteria for diagnosis of intellectual disability by any of the professional organizations "mirror the criteria of the capsule definition of Listing 12.05"). However, neither party recognizes that the technical changes proposed for Section 12.00 were not implemented in the final rules issued in 67 Fed. Reg. 20018-01. In those final rules, the Social Security Administration explained, "On August 21, 2000, we published final rules revising the medical criteria we use for evaluating mental disorders and traumatic brain injury in adults (65 FR 50746). In those final rules, we made several revisions to listing 12.05, including a revision to the capsule definition to the listing. Consequently, there is no need to include any additional changes to that listing in these final rules." 67 Fed. Reg.

16

20018-01, 20024. The "revision to the capsule definition to the listing" to which that final rule refers is the current capsule definition in Listing 12.05. The arguments both parties make relying on 67 Fed. Reg. 20018-01 are without foundation.

The Commissioner also supports several of her arguments with the Social Security Administration's Program Operations Manual System (POMS) DI 24515.056.D.2. (Comm'r Br. 5-6) (defining adaptive functioning); id. at 7 (noting that the judgment of a healthcare consultant is "necessary to affirm that adaptive functioning is consistent with IQ test results," and arguing that participation in special education will not establish "how effectively [Plaintiff] cope[d] with common life demands and how well [s]he met the standards of personal independence expected of someone in h[er] particular age group, sociocultural background, and community setting" before age 22). However, the Commissioner ignores that the POMS citation at issue relates to "Determining Medical Equivalence" with mental disorders. POMS DI 24515.056.D.2, available online at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056 (last visited, October 5, 2018).

In considering medical equivalence to Listing 12.05, adaptive functioning resulting from some other impairment must be equated with that resulting from intellectual disability before it can be determined whether the deficit present in that case satisfies the criterion of Listing 12.05. The POMS cited recognizes that

> there is a relatively close correlation between IQ test results and adaptive
> function," and that "Listing 12.05C is based on a combination of an IQ
> score with an additional and significant mental or physical impairment.
> The criteria for this paragraph are such that a medical equivalence
> determination would very rarely be required.

Id.  Moreover, and most importantly, the issue here is not medical equivalence.

Moreover, Dr. Smith is a psychological consultant who already opined that Plaintiff

meets the capsule definition of intellectual disability.  Therefore, the Commissioner's

arguments based upon the POMS are simply not applicable in this case.

The Commissioner's reliance on Hayes, 2014 WL 6609380, at *3; and Green,

2015 WL 4275933 at *3-4, is also misplaced.  Both of those cases rely upon a finding

that "A loss in adaptive functioning is manifested by difficulties in performing activities

of daily living, maintaining social relationships, or maintaining concentration,

persistence, and pace."  Green, 2015 WL 4275933 at *3 (quoting Hayes); Hayes, 2014

WL 6609380, at *3 (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05).  However,

Listing 12.05 does not provide, or rely upon, a definition of "loss in adaptive function."

As discussed above, it does not even speak of a loss in adaptive functioning, but of

"deficits in adaptive functioning initially manifested during the developmental period."

The court notes that "difficulties in performing activities of daily living, maintaining

social relationships, or maintaining concentration, persistence, and pace" relate to three

of the four broad functional areas upon which the Social Security Administration rates

the severity of every claimant's mental limitations in applying the Psychiatric Review

Technique, 20 C.F.R. § 416.920a(c)(3), at Step Two of the sequential evaluation process

and upon which it assesses the severity of mental limitations when considering the

"Paragraph B" criteria of most mental impairments at Step Three.  20 C.F.R., Pt. 404,

Subpt. P, App. 1 § 12.00C.  Paragraph D of Listing 12.05 also "contains the same

functional criteria that are required under <u>paragraph B</u> of the <u>other</u> mental disorders

listings." <u>Id.</u> § 12.00A (emphases added).  Therefore, the court can only surmise that the

courts in <u>Green</u> and <u>Hayes</u> were relying on these Paragraph D criteria to conclude that the

"paragraph B" criteria describe how a loss in adaptive functioning is manifested.

       That is not the case.  As this court noted in <u>Gross</u>:

> DSM–IV–TR and the regulations in Listing 12.05C and Listing 12.05D
> assume many mildly [intellectually disabled] individuals will be able to
> work.  The regulations account for the fact that some may become unable to
> work in two ways.  Listing 12.05D expresses the understanding that certain
> individuals will be unable to work because their mild [intellectual
> disability] <u>results in</u> "marked" limitations or repeated episodes of
> decompensation in at least two of the four broad mental functional areas
> [("paragraph B" criteria)].  20 C.F.R., Pt. 404, Subpt. P, App. 1, §
> 12.05D(1–4).  This listing implies that such an individual will be able to
> work unless or until h[er] mild [intellectual disability] results in the marked
> limitations or repeated episodes of decompensation.  Listing 12.05C
> expresses the understanding that certain mildly [intellectually disabled]
> individuals will be unable to work because they also have "a physical or
> other mental impairment imposing an additional and significant work-
> related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, §
> 12.05(C).  This listing implies that such an individual will be able to work
> unless [s]he has, or until [s]he develops, a severe physical impairment or an
> additional severe mental impairment.

<u>Gross</u>, 2012 WL 2449900, at *8.  Moreover, if three of the four broad mental functional

areas in Paragraph D describe how a loss in adaptive functioning is manifested, that

leaves Listing 12.05 unknowable because Paragraphs A through C are left without this

specific means of description, and Paragraph D is left with two redundant (or

unreconciled) descriptions.

       The ALJ erred in his application of the legal standard to Listing 12.05C at Step

Three of the sequential evaluation process.  The remaining question is, what remedy must

be applied?  Relying solely on the law of the Eighth Circuit, Plaintiff asks the court to remand for immediate computation and award of benefits.  (Pl. Br. 25); (Reply 3).

**D.      Remand for Immediate Computation and Award of Benefits**

Although Eight Circuit law is not binding in this circuit, the court recognizes that the law in the Tenth Circuit is to a similar effect.  Whether to remand the case for additional fact-finding or for an immediate calculation and award of benefits is within the discretion of the district court.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits:  Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006) (quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1987); and citing Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).  The decision to direct an award should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Here, the length of time this case has been pending has little, if any, impact on the decision.  However, remand for additional fact-finding would serve no useful purpose

because the administrative record has been fully developed and the ALJ himself has made findings that all the criteria of Listing 12.05C are met. Therefore, Plaintiff has met her burden to show disability at step three of the sequential evaluation process and all that remains is for the Commissioner to calculate and award benefits pursuant to Title XVI of the Social Security Act. The ALJ found that Plaintiff has a valid IQ score of 60 through 70 and has additional physical and mental impairments imposing an additional and significant work-related limitation of function. Although the ALJ found that Plaintiff does not have the "requisite deficits" in adaptive functioning prior to age 22, that is not the applicable legal standard, and in making that finding, as discussed above, the ALJ acknowledged that Plaintiff had "deficits in adaptive functioning prior to age 22." Each of these criterion is supported by the record evidence. Plaintiff meets the criteria of Listing 12.05C and remand is necessary to calculate and award benefits to Plaintiff.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for computation and award of Title XVI benefits in accordance with this decision.

Dated October 5, 2018, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**